CLERK'S OFFICE
A TRUE COPY
Dec 15, 2025
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin



AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

 ☑ Original  ❑ Duplic...

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)* )<br>an Apple iPhone 15, hereinafter the "Device".  The Device is )<br>currently located at the Federal Bureau of Investigation and )<br>Evidence Room, 3600 S. Lake Drive, St Francis, WI 53235, )<br>contained in an evidence bag as digital evidence item 1B1. ) | Case No.   25   MJ   223 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Eastern _____ District of _____ Wisconsin _____
*(identify the person or describe the property to be searched and give its location):*

    Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

    Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____ 12/29/2025 _____ *(not to exceed 14 days)*
❑ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Honorable William E. Duffin _____ .
*(United States Magistrate Judge)*

❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❑ for _____ days *(not to exceed 30)*  ❑ until, the facts justifying, the later specific date of _____ .

Date and time issued:      12/15/2025 2:30 p.m. _____          *William E. Duffin*
                                                     *Judge's signature*

City and state:      Milwaukee, Wisconsin _____      Honorable William E. Duffin, U.S. Magistrate Judge
                                                         *Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

<strong><u>ATTACHMENT A</u></strong>

The property to be searched is an Apple iPhone 15, hereinafter the "Device" as pictured below. The Device is currently located at the Federal Bureau of Investigation and Evidence Room, 3600 S. Lake Drive, St Francis, WI 53235, contained in an evidence bag as digital evidence item 1B1.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.



# ATTACHMENT B

## I.    Property to be Seized

1.  All records on the Device described in Attachment A that relate to violations of 18 U.S.C. §§ 875(c) (Transmission of Interstate Threats) & 2261A(2)(B) (Stalking), and involve BRADLEY SCOTT ROSE, and occurring after May 1, 2022, including:

a.  Records and information relating to the transmission of threatening, harassing, and/or intimidating communications to any person in any form including words, pictures, or emojis;

b.  Identities, addresses, photographs, PII, contact information, of any former coworker, colleague, professional associate, or their family members, that may have been searched for or collected for the purpose of transmitting threatening, harassing, and/or intimidating communications;

c.  Records and information relating to the surveilling and/or monitoring of any former co-workers or their family members;

d.  Records and information relating to communications with Internet Protocol address 98.144.59.74;

2.  Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.  Records evidencing the use of the Internet Protocol address 98.144.59.74 to communicate with servers for LinkedIn, Google, and Facebook, including:

a.  records of Internet Protocol addresses used;

b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

2



# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

<table>
<tr><td>In the Matter of the Search of<br><i>(Briefly describe the property to be searched<br>or identify the person by name and address)</i><br><br>an Apple iPhone 15, hereinafter the "Device". The Device is currently located at the Federal Bureau of Investigation and Evidence Room, 3600 S. Lake Drive, St Francis, WI 53235, contained in an evidence bag as digital evidence item 1B1.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>Case No. 25 MJ 223</td></tr>
</table>

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 875(c) | Transmission of Threats Interstate |

The application is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Mark Dring, Special Agent - FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ 12/15/2025 _____

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable William E. Duffin, U.S. Magistrate Judge
_____
*Printed name and title*

CLERK'S OFFICE
A TRUE COPY
Dec 15, 2025
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Mark L. Dring, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since March of 2007. Since July of 2025, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including online threats and other violent crime matters, defined under Title 18 of the United States Code. I have participated in the investigation of numerous crimes to include warrants to multiple electronic service providers and utilized email search warrants to pursue investigation both domestically and abroad.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      The property to be searched is an Apple iPhone 15, hereinafter the "Device," described in Attachment A.  The Device is currently located at the Federal Bureau of Investigation and Evidence Room, 3600 S. Lake Drive, St Francis, WI 53235, contained in an evidence bag as digital evidence item 1B1.

5.      The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

6.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C § 875(c), Transmission of Interstate Threats, and 18 U.S.C. § 2261A, Stalking, have been committed by Bradley Scott ROSE. There is also probable cause to search the information described in Attachment A for evidence and instrumentalities of these crimes as further described in Attachment B.

## PROBABLE CAUSE

7.      Bradley Scott ROSE is a U.S. citizen, born June 01, 1984. During the period of 2017 through May 2022, ROSE worked for Microsoft Corporation, Remond, Washington. ROSE worked for Microsoft while living in Bayside, Wisconsin, a suburb of Milwaukee, Wisconsin. ROSE's direct supervisor for Microsoft was P.M., who also resides in a suburb of Milwaukee, Oconomowoc, Wisconsin.

8.      Prior to ROSE leaving Microsoft, he claimed discrimination by P.M. in February of 2022. Microsoft investigated the claims internally and found no discrimination, and found instead ROSE to be at fault. ROSE voluntarily left Microsoft in May of 2022, before the investigation concluded, citing personal reasons. Prior to and after leaving Microsoft, ROSE blamed P.M. for his situation and began calling P.M. in the middle of the night utilizing the telephone number (414) 899-7970. ROSE has also tried to contact P.M. from his brother's mobile telephone (262) 402-2614.[1] ROSE made several calls, blocked the caller ID information, and on January 29, 2025, sent the following text message from (262) 402-2614:

---

[1] An open records search on Google indicates that this telephone number belongs to B.C. Rose. According to Bayside, WI Police reports, B.C. Rose is Bradley S. ROSE's brother. According to the same police reports, B.C.

2



---

Rose has down's syndrome, and as of 07/06/2025, had also been diagnosed with schizophrenia. It is therefore possible, if not likely, that Bradley S. Rose is using B.C. Rose's telephone to make contact with P.M. and others.

3



9.     P.M. further noted that ROSE would view her LinkedIn profile almost daily in 2022, particularly after ROSE left Microsoft.[2]  Further, according to P.M., ROSE reached out to P.M.'s spouse and brother via Facebook and LinkedIn beginning on approximately February 26, 2024, and continuing until he was blocked.

10.     Search warrant records obtained from Verizon, Google, LinkedIn, and Facebook revealed that ROSE utilized an iPhone for his mobile device, with the current telephone number 414-899-7970.  Records from Google and Facebook revealed that ROSE utilizes both his iPhone

---

[2] LinkedIn has a feature allowing users to see who has viewed their profile. *See* https://www.linkedin.com/help/linkedin/answer/a540651

4

and a Macintosh PC to log into accounts, sometimes using both on the same day. The most recent information available from Facebook shows ROSE logging into Facebook on November 17, 2025, via his iPhone. Google and Facebook logs reveal that ROSE's iPhone utilized Internet Protocol (IP) address 98.144.59.74.

11. T.I., resident of Menomonee Falls, Wisconsin, was hired to replace ROSE at Microsoft and take over ROSE's sales territory. T.I. and her husband J.I. are both employees of Microsoft. During the period of January 2023 through June 2024, ROSE worked for a Microsoft partner named, "Root16." ROSE contacted T.I. to cooperatively increase sales. According to T.I., she conducted a Microsoft Teams meeting with ROSE, who acted like a longtime friend and spoke about her husband like ROSE knew J.I., although J.I. never had prior contact with ROSE. T.I. stated she felt uncomfortable after speaking with him and did not respond to further emails and texts. T.I further elaborated, that during this timeframe, January 2023 through June 2024, ROSE would view her LinkedIn profile almost daily. Later, in 2025, with the most recent instance in July 2025, ROSE has regularly viewed the profiles on LinkedIn of three former coworkers from Microsoft: H.H., S.H., and T.P.

12. ROSE requested J.I.'s contact information from a mutual associate, J.G. On May 16, 2025, J.G. introduced J.I. to ROSE by text message (below). ROSE then called J.I. multiple times that day without success.

5



Later that same day, ROSE sent the following text message to J.I., from (414) 899-7970:



13.     The text messages during the introduction to J.I. indicated ROSE already knew J.I and T.I. resided in Menomonee Falls, WI.   ROSE had no prior contact with T.I. or J.I. where personal address information would have been shared.

14.    T.I. and J.I. contacted the Menomonee Falls Police Department, who advised J.I. and T.I. to block ROSE's calls and text messages, and to have no further contact with him.

15.    During the period of June 2024 – December 2024, ROSE worked for Illumina Technologies, another Microsoft partner company. A.A. acted as ROSE's supervisor. A.A. stated that during ROSE's time with Illumina, ROSE made many mistakes, causing problems with Microsoft. In October 2024, Illumina initiated a performance improvement plan with ROSE. In response, ROSE began sending derogatory messages to A.A.'s team. ROSE was terminated on December 17, 2024.   After ROSE's termination, he utilized Bradley.s.rose@gmail.com to communicate with Illumina.

16.    After his termination from Illumina, ROSE began sending harassing text messages from (414) 899-7970 to A.A. and P.M. During December 2024 and in January 2025, while A.A. attended a trade show in New York City, A.A. received the following messages from ROSE via text message from (414) 899-7970: A.A. stated if he lived close to ROSE, he would be more fearful.

7





17.     A close inspection of the photographs of the pistols sent to A.A., the guns appear to be a Smith & Wesson SD40, and the other is a Sig Sauer P210. Both are semi-automatic pistols.

18.     Records obtained from Facebook reveal that in a "Facebook Event"[3], ROSE is listed in an event called, "Wisconsin Concealed Carry Class" located at 2701 Larsen Road, Green Bay, Wisconsin. The date of the class was October 25, 2025.

19.     Following the receipt of the photographs with weapons, A.A. contacted local law enforcement in Colorado and filed a report. The responding officer spoke with ROSE by telephone. ROSE denied knowing A.A. and ever working for Illumina Technologies.  The officer noted that ROSE became belligerent as the call progressed.

---

[3] Facebook events is a feature on Facebook that allows users to create, find, and manage events such as personal gatherings or professional ones. *See* https://www.facebook.com/help/1076296042409786

20.    A.A. is not sure where or how ROSE obtained the photo of him and his family that ROSE sent to A.A. (above).  A.A. stated the family photograph was most likely on the Facebook page of A.A.'s sister-in-law, L.A.  A.A. further stated ROSE had utilized Facebook and LinkedIn to contact at least five members of his family, including A.A.'s spouse H.A., sister-in-law L.A., father M.A. and family members K.A. and E.A.

21.    The Facebook warrant revealed ROSE sent friend requests to A.A. on 12/19/2024, K.A. on 01/06/2025, and H.A. on 01/17/2025.   These requests to A.A. and extended family members occurred while ROSE was sending harassing texts with his phone.

22.    On the morning of June 6, 2025, ROSE made several calls to T.I. from (414) 899-7970. When the calls weren't answered, he sent the following text message:



21.     On June 11, 2025, P.M. noticed a suspicious vehicle outside her Oconomowoc, Wisconsin, residence for almost 20 minutes. The vehicle, a black sedan, is consistent with ROSE's registered black 2019 Acura TLX sedan. When P.M. attempted to confront the driver, the vehicle reversed quickly, almost crashing into another vehicle, and then departed. P.M. lived in Chicago when ROSE worked at Microsoft, and P.M. never provided ROSE with a personal address. According to records obtained from Google, ROSE searched the internet to obtain P.M.'s address.

22.     P.M.'s neighbor captured the black Acura sedan on a doorbell camera system. According to telemetric records obtained, ROSE's Acura traveled to P.M.'s subdivision on three separate occasions: December 22, 2024, January 2, 2025, and June 11, 2025.  The records indicated ROSE was stationary in P.M.'s subdivision for at least 41 minutes on June 11, 2025.  On June 12, 2025, P.M. filed a report with Oconomowoc Police Department (OPD) documenting the incident.



23.     ROSE's sedan, observed at his residence on October 28, 2025 and November 17, 2025, is shown below:

11



24.     During early July 2025, Microsoft Executive Security, H.S. contacted the FBI and indicated a senior Microsoft Executive had received a threatening communication from the email bradley.s.rose@gmail.com.  While the specific content of the email was not provided, H.S. felt the content was serious enough to contact the FBI.

25.     According to records obtained from Google, on July 8, 2025, ROSE sent an email to S.N., with the following content:

S., Good morning,

I woke up this morning to thoughts of your dead disabled child witnessing the harm your company has caused these past few years. You are a piece of shit despite your achievements.

Karma is coming for you and you know it.

May God have mercy on your soul.

Cheers,

26.     According to records obtained from Google, ROSE was logged into Google at the time the email to S.N. was sent and utilized IP address 98.144.59.74. Further, according to LinkedIn records, ROSE logged into LinkedIn the same day, again with IP address 98.144.59.74

27.     On July 16, 2025, P.M. received five calls in a two-minute period from ROSE, from telephone number (414) 899-7970. Also on July 16, 2025, J.M., an executive with Root 16, received an email from ROSE, using the email account bradley.s.rose@gmail.com, with the threat: "You have a lot to answer for BITCH!!! See you in Washington." ROSE sent a second email to J.M. on 07/18/2025 with a similar message. J.M. was scheduled to be a keynote speaker at a Microsoft executive partner event in Bellevue, Washington on July 23- 24, 2025. J.M. explained that J.M.'s spouse, K.M. and sister, L.M. also both received contacts from ROSE via Facebook and LinkedIn since ROSE had left Root16. J.M. cancelled his speaking engagement in Bellevue as a result of ROSE's communications.

28.     According to records obtained from Google, ROSE was logged into Google on 07/16/2025 and 07/18/2025 when the emails to J.M were sent.  IP address records corresponding to the time of the emails showed ROSE utilized 98.144.59.74 for both emails.

29.     During September of 2025, a former romantic interest of ROSE's, S.W. provided information on a 2013 temporary restraining order (TRO) filed against ROSE. When S.W. ended the approximately five-month relationship with ROSE, S.W. recalled that ROSE "blew up every social media account" with hundreds of calls, texts, emails. S.W. particularly recalled ROSE reviewing S.W.'s LinkedIn account almost daily, even after the TRO had been filed.  S.W. described ROSE's actions as a "campaign of terror".

13

## THE DEVICE

30.     The Device is currently in the lawful possession of the FBI.  It came into the FBI's possession in the following way:  On Wednesday, December 10, 2025, FBI agents were preparing to execute a search warrant of the ROSE's premises, located at 740 E. Bay Point Road, Bayside, Wisconsin.  The search warrant authorized agents to seize and search "storage containers, computers, cell phones (whether in the actual, physical possession of a person or not) located on the premises . . ." *See* 25-MJ-204 (WED).  As agents surveilled the house, they noticed ROSE leave the premises in his black Acura sedan. Agents conducted a vehicle stop and informed ROSE that agents were present to execute a search warrant. Agents seized ROSE's phone, but not before agents permitted ROSE to call his wife and his lawyer. Therefore, while the FBI might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

31.     The Device is currently in storage at the Federal Bureau of Investigation and Evidence Room, 3600 S. Lake Drive, St Francis, WI 53235.  In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the FBI.

## TECHNICAL TERMS

32.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.      Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio

14

signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large

15

amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

      d.      GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

      e.      PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-

16

processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

33. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, tablet, and PDA. In my training and experience, examining data stored on

17

devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

34.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

35.     *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.     Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.     The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence

18

is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f.    I know that when an individual uses an electronic device to send threatening or harassing messages, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

36.    *Nature of examination.*    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

37.    Manner of execution. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the

19

physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

38.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

<strong><u>ATTACHMENT A</u></strong>

The property to be searched is an Apple iPhone 15, hereinafter the "Device" as pictured below. The Device is currently located at the Federal Bureau of Investigation and Evidence Room, 3600 S. Lake Drive, St Francis, WI 53235, contained in an evidence bag as digital evidence item 1B1.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.



# ATTACHMENT B

**I.     Property to be Seized**

1.  All records on the Device described in Attachment A that relate to violations of 18 U.S.C. §§ 875(c) (Transmission of Interstate Threats) & 2261A(2)(B) (Stalking), and involve BRADLEY SCOTT ROSE, and occurring after May 1, 2022, including:

a.  Records and information relating to the transmission of threatening, harassing, and/or intimidating communications to any person in any form including words, pictures, or emojis;

b.  Identities, addresses, photographs, PII, contact information, of any former coworker, colleague, professional associate, or their family members, that may have been searched for or collected for the purpose of transmitting threatening, harassing, and/or intimidating communications;

c.  Records and information relating to the surveilling and/or monitoring of any former co-workers or their family members;

d.  Records and information relating to communications with Internet Protocol address 98.144.59.74;

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.      Records evidencing the use of the Internet Protocol address 98.144.59.74 to communicate with servers for LinkedIn, Google, and Facebook, including:

a.  records of Internet Protocol addresses used;

b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

2